OPINION
{¶ 1} On December 9, 2003, the Stark County Grand Jury indicted appellant, Michael Steinbach, on one count of robbery in violation of R.C. 2911.02. Said charge arose from an incident involving Michelle Williams.
 {¶ 2} A jury trial commenced on February 2, 2004. The jury found appellant guilty. By judgment entry filed February 6, 2004, the trial court sentenced appellant to four years in prison.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "The jury's verdict was not supported by sufficient evidence and was against the manifest weight of the evidence, as there was no force necessary to a robbery offense present and where was a valid alibi defense."
 II {¶ 5} "The appellant was denied his constitutional right to a fair trial where the prosecutor was allowed to elicit testimony about the appellant's post-arrest silence."
 III {¶ 6} "The appellant was denied the effective assistance of counsel where there was no objection to the discussion of appellant's post-arrest silence."
 I {¶ 7} Appellant claims his conviction for robbery was against the manifest weight of the evidence. Specifically, appellant claims the facts do not support that any force was used to perpetuate the offense. Also, his alibi defense established he could not have committed the offense. We disagree.
 {¶ 8} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 9} Appellant was convicted of robbery in violation of R.C.2911.02(A)(3) which states as follows:
 {¶ 10} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 11} "(3) Use or threaten the immediate use of force against another."
 {¶ 12} Force is defined in R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."
 {¶ 13} The victim, Michelle Williams, testified while she was pumping gas into her vehicle, appellant entered her vehicle and rummaged around the front and back seats. After Ms. Williams yelled at appellant, he attempted to grab her purse:
 {¶ 14} "Q. Where did you have your purse?
 {¶ 15} "A. I had it on my left arm just hanging from my arm.
 {¶ 16} "Q. And after you yelled at him, he came at you?
 {¶ 17} "A. He was standing in front of me and he just kind of lunged forward and grabbed just the side of my purse. And I pulled back, started screaming, and then he got back in the car.
 {¶ 18} "Q. How close were you to him?
 {¶ 19} "A. I'd say just a couple feet. Maybe two or three feet." T. at 96.
 {¶ 20} We find from all the circumstances, from the physical invasion of her vehicle to the lunging at her from two to three feet to grab her purse, that some force was physically exerted towards her and her purse. The element of force was established by the evidence.
 {¶ 21} Appellant also argues his alibi defense established he could not have committed the crime. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 22} The offense occurred on October 4, 2003 at approximately 8:00 p.m. Elaine Compton testified appellant came to her residence on said date to help her around the house. T. at 152. Appellant stayed the evening only to go to his father's home for approximately five minutes. T. at 153. Around midnight, police officers arrived at Ms. Compton's home and dropped off an acquaintance of appellant's, Tom Marple. T. at 154-155. Both appellant and Mr. Marple spent the night in Ms. Compton's basement. T. at 156. Ms. Compton locked the men in the basement while she stayed upstairs watching television until morning. T. at 156-157.
 {¶ 23} On cross-examination, Ms. Compton admitted she was unsure of the date. T. at 163. Despite Ms. Compton's insistence it was the night the police brought Mr. Marple to her residence, it is still possible that the jury chose to disbelieve Ms. Compton's testimony and believe the eyewitness identification by Ms. Williams. T. at 97, 129.
 {¶ 24} Given the identification testimony by Ms. Williams and the fact that Ms. Compton waffled on the exact date, we find the evidence presented, if believed by the jury, supports the conviction.
 {¶ 25} Assignment of Error I is denied.
 II, III {¶ 26} Appellant claims the state violated his right to remain silent by eliciting testimony of his post-arrest silence. Appellant also claims his counsel was deficient in not objecting to the comment. We disagree.
 {¶ 27} In Wainwright v. Greenfield (1986), 474 U.S. 284, the United States Supreme Court reaffirmed its holding in Doylev. Ohio (1976), 426 U.S. 610, noting "[i]n Doyle, we held thatMiranda warnings contain an implied promise, rooted in the Constitution, that `silence will carry no penalty.'" Wainwright
at 295, quoting Doyle at 618. The Wainwright court stated at 295, that "[w]hat is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized."
 {¶ 28} Both of these assignments of error involve a discussion on the same issue and the standard of review of plain error/undue prejudice. An error not raised in the trial court must be plain error for an appellate court to reverse. State v.Long (1978), 53 Ohio St.2d 91; Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Long. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.
 {¶ 29} As for ineffective assistance of counsel, the standard this issue must be measured against is set out in State v.Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 {¶ 30} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v. Washington [1984],466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 31} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 32} The first issue to be addressed is whether the testimony as it stands violates Doyle. For the following reasons, we answer this question in the negative.
 {¶ 33} The complained of testimony from Detective Mark Kandal, the investigating officer, is as follows:
 {¶ 34} "Q. After interviewing Miss Williams, did you try to locate the Defendant in this case?
 {¶ 35} "A. I did.
 {¶ 36} "Q. What steps did you take to locate him?
 {¶ 37} "A. Went to a (sic) identified girlfriend/friend's house on 39th Street just outside the city limits in the City of Canton — or in Stark County. Contacted I believe it was a Jennifer Scott at that location. Also went to an address on 44th Street and spoke with an Elaine Compton, identified herself as an ex-wife.
 {¶ 38} "Q. And were you able to locate the Defendant at that time?
 {¶ 39} "A. I was not.
 {¶ 40} "Q. Did you ever get the opportunity to speak with him?
 {¶ 41} "A. I asked, he refused at the time of his arrest." T. at 129-130.
 {¶ 42} From a review of the above testimony, we find the state did not purposely elicit the testimony, and the question posed did not lead to a Doyle violation. The matter was immediately dropped. In fact, the state rested its direct examination. Appellant's defense was that he was not there during the offense, per Ms. Compton's testimony. The fact that appellant did not cooperate with police had no bearing on the facts at issue.
 {¶ 43} Appellant also did not suffer any undue prejudice. No further comment was made. The central issue as evidenced by defense counsel's cross-examination of the officer was the accuracy of Ms. Williams's identification of appellant vis-á-vis his alibi defense.
 {¶ 44} Upon review, we find no violation of Doyle, no undue prejudice and no ineffective assistance of counsel regarding the complained of testimony.
 {¶ 45} Assignments of Error II and III are denied.
 {¶ 46} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
Farmer, J., Hoffman, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.